IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

BRANDON SHERROD,

        Petitioner,

v.                                                                Case No. 2:19-cv-00485

DONALD F. AMES, Superintendent,
Mount Olive Correctional Complex,

        Respondent.

## PROPOSED FINDINGS AND RECOMMENDATION

This matter is assigned to the Honorable Thomas E. Johnston, Chief United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).  Pending before the court are Petitioner's Petition for a Writ of Habeas Corpus (ECF No. 2) and Respondent's Motion for Summary Judgement (ECF No. 31).  For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** Respondent's Motion to Dismiss and Motion for Summary (ECF No. 9) and dismiss this matter from the docket of the court.

## RELEVANT PROCEDURAL HISTORY

### A.    Petitioner's criminal case – Case No. 10-F-185

In February 2010, a Kanawha County Grand Jury indicted Brandon Sherrod, a.k.a. "Young Gunna" (hereinafter "Petitioner") and his co-defendant, Michael Serrano, a.k.a "White Mike" ("Serrano"), on one count of murder by use of a firearm, in violation of

W.Va. Code § 61-2-1. (ECF No. 9-2, Ex. 2).  Following a three-day jury trial in May 2010 (ECF Nos. 9-3, 9-4, and 9-5), Petitioner was convicted of First Degree Murder with a recommendation of mercy. (ECF Nos. 9-6, Ex. 4 and 9-7, Ex. 5).  On June 8, 2011, Petitioner was sentenced to life with mercy. (ECF Nos. 9-8, Ex. 6 and 9-9, Ex. 7). Petitioner was represented in the trial court proceedings and on appeal by attorney Edward L. Bullman ("Bullman").

### B.    Petitioner's Direct Appeal - No. 11-1121

Petitioner, by counsel, appealed his conviction and sentence to the Supreme Court of Appeals of West Virginia ("SCAWV"), raising two assignments of error:

1.    There was insufficient evidence to establish the element of premeditation to commit murder.

2.    The trial court erred by refusing to grant a mistrial following a statement by a witness for the State regarding the Petitioner's current incarceration[.] The trial court refused the request for a mistrial and instead gave a curative instruction to the jury.  The Court should review the issue to determine the extent a curative instruction is sufficient to overcome prejudice caused by referencing a defendant's incarceration.

(ECF No. 9-10, Ex. 8).  On November 19, 2012, the SCAWV affirmed Petitioner's conviction and sentence.  *State v.  Sherrod*, No. 11-1121, 2012 WL 5857302 (W. Va. Nov. 19, 2012) ("*Sherrod I*").  (ECF No. 9-12, Ex. 10).

### C.    Petitioner' first habeas petition – Case No. 13-P-415

On July 31, 2013, Petitioner filed his first Petition Under W.Va. Code 53-4A-1 for Writ of Habeas Corpus in the Circuit Court of Kanawha County alleging the following claims for relief:

1.    The State obtained the Indictment against Petitioner through perjury;

2.    Counsel provided ineffective assistance.

2

      (a)    Failure to call a witness who would have testified that another suspect told her he was looking for Williams to kill him.

      (b)    Failure to cross-examine the State's expert about gunshot residue evidence found inside the suspect car.

  3.    Prosecutorial misconduct.

      (a)    The prosecution advised the jury in opening statements that the victim was shot at point-blank range, when the medical examiner testified that the shots were from further away.

      (b)    The prosecution told the jury that the co-defendant gave a statement to the New York City Police that was never turned over to the defense.

(ECF No. 9-14, Ex. 12). By Memorandum Opinion and Order entered August 23, 2013, the Circuit Court summarily denied and dismissed the petition pursuant to Rule 4(c) of the Rules Governing Post-Conviction Habeas Corpus Proceedings in West Virginia because the petition contained "a mere recitation of grounds without adequate factual support" and because Petitioner failed to demonstrate he was entitled to relief. (ECF No. 9-15, Ex. 13).

### D.    Petitioner's first habeas appeal - No. 13-1141

On November 13, 2013, Petitioner filed a pro se Notice of Appeal of the Circuit Court's Order denying habeas relief. (ECF No. 9-16, Ex. 14). In his Petition for Appeal, Petitioner raised the following two assignments of error:

  1.    The circuit court erroneously dismissed the Petitioner's pro se petition for a writ of habeas corpus ad-subjiciendum without appointing counsel and without holding a[n] evidentiary hearing on the ground said petition contains a mere recitation of the grounds without factual support, and, failed to demonstrate that the Petitioner is entitled to relief, therefore, this violated the Petitioner's constitutional rights guaranteed by the Due Process Clause of the Fourteenth Amendment of the United States Constitution and under Article III, §§ 10 and 14 of the West Virginia Constitution.

2.  The circuit court's August 22, 2013, order dismissing Petitioner's pro se petition for a writ of habeas corpus ad-subjiciendum without appointing counsel and without holding a[n] evidentiary hearing failed to make specific findings of fact and conclusions of law regarding issues raised in violation of W.Va. Code 53-4A-7(c), and the Petitioner's constitutional rights guaranteed by the Due Process Clause of the Fourteenth Amendment of the United States Constitution and under Article III, §§ 10 and 14 of the West Virginia Constitution.

(ECF No. 9-17, Ex. 15).

After full briefing, on September 19, 2014, the SCAWV issued a Memorandum Decision finding that Petitioner had conceded that the Circuit Court properly dismissed his first petition because he failed to set forth adequate factual grounds in support of his grounds for relief and affirmed the dismissal thereof. *Sherrod v. Ames*, No. 13-1141, 2014 WL 4662484 (W.Va. Sept. 19, 2014) ("*Sherrod II*"). (ECF No. 9-19, Ex. 17).

### E.  Petitioner's second habeas petition – Case No. 13-P-6784

On December 12, 2013, while his appeal in No. 13-1141 was pending, Petitioner, proceeding pro se, filed a second habeas petition in the Circuit Court which alleged the following claims: (1) counsel provided ineffective assistance of counsel; (2) the trial court erred in admitting overly gruesome crime scene and autopsy photographs; (3) the evidence was insufficient to support the jury's verdict; (4) Petitioner was prejudiced by the admission of an unverified 19 minute phone call in a foreign language; (5) the State engaged in prosecutorial misconduct when the prosecutors (a) used an unauthenticated recording of the 19 minute phone call, (b) failed to utilize an English speaking interpreter to translate the 19 minute recording, and (c) argued to the jury that Petitioner committed premeditated murder when the evidence failed to support such argument; (6) the 19 minute telephone recording was not authenticated; (7) Petitioner's motion for judgment

of acquittal should have been granted; (8) cumulative error deprived Petitioner of a fair trial. (ECF No. 9-21, Ex. 19).

By Memorandum Opinion and Order entered February 5, 2014, the Circuit Court again summarily denied and dismissed the second petition pursuant to Rule 4(c) of the Rules Governing Post-Conviction Habeas Corpus Proceedings in West Virginia because the petition contained "a mere recitation of grounds without adequate factual support" and because Petitioner failed to demonstrate he was entitled to relief. (ECF No. 9-22, Ex. 20).

### F.    Petitioner's second habeas appeal - No. 14-0232

On March 10, 2014, Petitioner filed a Notice of Appeal of the Circuit Court's February 5, 2014 Order. (ECF No. 9-23, Ex. 21). In his Petition for Appeal, Petitioner alleged the following three assignments of error:

1.    The Petitioner avers the circuit court on February 5, 2014, abused its discretion and erroneously dismissed his petition for a writ of habeas corpus ad-subjiciendum without appointing counsel and without holding a[n] evidentiary hearing on the claim said petition contains a mere recitation of the grounds without adequate factual support, and failed to demonstrate that the Petitioner is entitled to relief. This in essence violated the Petitioner's constitutional rights guaranteed by the Due Process Clause of the Fourteenth Amendment of the United States Constitution and under Article III, §§ 10 and 14 of the West Virginia Constitution.

2.    The Petitioner avers the circuit court's February 5, 2014 Memorandum Opinion and Order summarily dismissing his petition for a writ of habeas corpus ad subjiciendum failed to make specific findings of fact and conclusions of law regarding the cognizable issues raised in violation of W.Va. Code 53-4A-7(c), and this violated his constitutional rights guaranteed by the Due Process Clause of the Fourteenth Amendment of the United States Constitution and under Article III, §§ 10 and 14 of the West Virginia Constitution.

3.    The Petitioner avers the circuit court committed prejudicial error in violation of his state and federal constitutional rights to a fair and impartial post-conviction proceeding when the original trial court

> and sentencing judge, the Honorable Charles E. King, Jr., (J), presided over and ruled upon his initial and secondary petition(s) for a writ of habeas corpus.

(ECF No. 9-24, Ex. 22).  Respondent filed a response on July 3, 2014 (ECF No. 9-25, Ex. 23), and Petitioner filed a reply on July 9, 2014 (ECF No. 9-26, Ex. 24).

On September 19, 2014, the SCAWV consolidated this second habeas appeal with Case No. 13-1141, and affirmed the Circuit Court's decision to dismiss Petitioner's claims concerning the sufficiency of the evidence, the denial of the motion for judgment of acquittal, and prosecutorial misconduct based upon arguing for premeditation when it was unsupported by the evidence, as stated in claims (3), (5)(c), and (7), of the second habeas petition. *Sherrod II*, *supra*, 2014 WL 4662484, at *3. (ECF No. 9-19, Ex. 17). The SCAWV explained that these three claims were previously adjudicated in Petitioner's direct appeal. *Id.* The SCAWV further affirmed dismissal of claims (2), (4), and (6), because those evidentiary issues did not implicate federal constitutional claims and, thus, were not reviewable in habeas corpus. *Id.* However, the SCAWV reversed the Circuit Court's decision regarding Petitioner's claims of ineffective assistance of counsel and remanded the matter to the Circuit Court for a hearing. *Id.*

### G.    Petitioner's first habeas action (Case No. 13-P-415) on remand

On remand, attorney Robert P. Dunlap II was appointed to represent Petitioner and, on December 14, 2015, he filed an amended petition and memorandum of law alleging the following claims of ineffective assistance of counsel:  (1) Counsel omitted a jury instruction limiting the weight of the co-defendant's guilty plea; (2) Counsel failed to challenge the gunshot residue expert testimony; and (3) Counsel failed to challenge a recorded phone conversation between an inmate, Petitioner, and others without translation and verification of authenticity. (ECF Nos. 9-27, Ex. 25 and 9-28, Ex. 26).

On April 14, 2016, Petitioner, by counsel, filed a second amended petition and supplemental memorandum asserting that trial counsel, Mr. Bullman, failed to request the *Caudill/Flack* jury instruction and then failed to challenge the lack of such instruction on appeal (Grounds (4) and (5)), and also alleging a claim of cumulative error (Ground (6)). (ECF No. 9-29, Ex. 27). On May 5, 2016, Petitioner, by counsel, filed a second supplemental memorandum further addressing Grounds (4) and (5) of his second amended petition. (ECF No. 9-30, Ex. 28).

However, at the omnibus evidentiary hearing held on June 8, 2017, Petitioner limited his claims to six grounds for habeas relief, as follows:

THE COURT: Well, let me ask you this, sir. He filled out one of them—

MR. DUNLAP: Losh list, Judge?

THE COURT: Yeah. He did, didn't he?

MR. DUNLAP: Yes, Judge.

THE COURT: The list, or the points—did he—have you raised on his behalf all of those that he didn't give up or waive?

MR. DUNLAP: Absolutely, Your Honor. In fact, we've worked very closely with he and my staff, and we've limited our focus to six specific items.

THE COURT: And those are the six he wants to raise?

MR. DUNLAP: Yes, Your Honor.

THE COURT: Do you understand that anything else other than this six you have given up or waived, surrendered your right to bring it before a court for relief? Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. All right. Mr. Dunlap, what are those six?

MR. DUNLAP: Yes, Your Honor. In summary, those six items include that, in fact, there was a jury instruction given, limiting the weight of the co-defendant's plea of guilty. That information was brought out during trial.

And then a jury instruction was omitted that limited the impact that should have had. The second ground is that ineffective assistance of counsel is argued due to trial counsel's failure to challenge the gunpowder residue and expert testimony. Again, our expert witness is going to address that matter. The third is ineffective assistance of counsel due to trial counsel's failure to challenge a recorded phone conversation that was entered into the record, but never transcribed, even to this day, not translated nor transcribed. And that took out the ability for the—frankly, for a fair trial as proper identification, verification, and translation. In the absence of those, it led to him having an inability to challenge that evidence adequately. Ineffective assistance of trial counsel for failure to request the *Caudill* and *Flack* jury instruction, Judge. And ineffective assistance of counsel—of appellate counsel, for failing to request relief for trial counsel's failure to request the *Caudill-Flack* jury instruction. No. 6 is, of course, if any of those individually or in conjunction together didn't meet the standard, we would argue that cumulative error was served, and that in totality, it would have—and frankly then—been outcome determinative for the jury. Those would be our six in summary.

(ECF No. 9-31, Ex. 29 at 4–7).

During the hearing, Petitioner's expert, Martin P. Sheehan ("Sheehan"), opined that Bullman violated the standard of care in failing to request the *Caudill* instruction. (ECF No. 9-31, Ex. 29 at 15–16). Sheehan also testified that Bullman's failure to investigate and cross-examine the State's gunshot residue expert's testimony fell below the standard of care. (*Id.* at 16–17). He believed that counsel did not make it clear to the jury that gunshot residue falls off a person and that Bullman failed to capitalize on the evidence that other persons who had engaged in target practice with firearms recently had been in the same vehicle. (*Id.* at 17).

On cross-examination however, Sheehan conceded that strategic decisions of counsel generally do not form the basis for ineffective assistance and that Bailey and Serrano's testimony significantly lessened the impact of the incriminating nature of the gunshot residue with respect to Petitioner. (*Id.* at 29–30). Sheehan further testified that, because the telephone call was never transcribed, Petitioner failed to demonstrate that

the translation had a "substantive effect on the outcome" of the trial. (*Id.* at 19). Thus, he opined that Petitioner most likely would be unable to demonstrate any prejudice resulting therefrom. (*Id.*)

Bullman also testified at the omnibus hearing and conceded that his failure to request the *Caudill* instruction was an oversight and not a strategic decision. (ECF No. 9-31, Ex. 29 at 42). He also testified that the gunshot residue expert's testimony was consistent with the defense's theory of the case and demonstrated that Petitioner was not situated in the vehicle where the gunpowder residue was found, but rather, was located where Bailey and Serrano were sitting. (*Id.* at 43). Therefore, Bullman stated that, based on his prior experience with such expert testimony, he made the strategic decision not to further question the expert on the issue. (*Id.* at 44-46). Finally, Bullman testified that he did not recall making a strategic decision to not have the phone call transcribed or that the phone call revealed anything exculpatory. (*Id.* at 47).

By Order entered July 31, 2017, the Circuit Court denied Petitioner habeas relief. (ECF No. 9-32, Ex. 30). The Court concluded that Petitioner waived his claim that the trial court erred in failing to give a *Caudill* instruction by not raising it on direct appeal and because the claim constituted ordinary trial error not subject to constitutional review on habeas. (*Id.* at 8). Similarly, the Court found that Petitioner failed to present any evidence regarding his claim that the State withheld exculpatory evidence or that the State's use of Serrano's statement violated Rule 404(b). (*Id.* at 8-9, 17). Finally, the Court concluded that Petitioner failed to satisfy his burden of demonstrating that any error occurred in his criminal proceedings and, therefore, his claim of cumulative error was "completely inapplicable." (*Id.* at 23). The Court likewise concluded that Petitioner failed to demonstrate that trial counsel rendered ineffective assistance. (*Id.* at 24–32).

### H.    Petitioner's third habeas appeal - No. 17-0726

On August 21, 2017, Petitioner, proceeding pro se, filed his Notice of Appeal of the Circuit Court's July 31, 2017 Order denying him habeas relief. (ECF No. 9-33, Ex. 31). Petitioner's Petition for Appeal alleged (1) that the Circuit Court abused its discretion when it failed to give a jury instruction limiting the weight of the co-defendant's guilty plea; (2) ineffective assistance of trial counsel in failing to (a) challenge the State's gunshot residue expert testimony; (b) challenge a recorded telephone conversation among Petitioner, an inmate, and others, without translation or verification of authenticity; (c) request the *Caudill/Flack* jury instruction; and (d) object to, move for a mistrial for, and/or request a limiting instruction when two State witnesses testified to Rule 403 and 404(b) evidence of Petitioner; (3) ineffective assistance of trial counsel in failing to (a) request the *Caudill/Flack* jury instruction; and (b) object to, move for a mistrial for, and/or request a limiting instruction when two State witnesses testified to Rule 403 and 404(b) evidence of Petitioner; and (4) cumulative error.  (ECF No. 9-34, Ex. 32).

Following full briefing, on February 22, 2019, the SCAWV issued a Memorandum Decision declining to address the claims that had not been raised in the lower court and adopting and incorporating the Circuit Court's "well-reasoned findings and conclusions as to all of the remaining assignments of error raised in this appeal" and affirmed the Circuit Court's July 31, 2017 Order.  *Sherrod v. Ames*, No. 17-0726, 2019 WL 912831 (W.Va. Feb. 22, 2019) ("*Sherrod III*").  (ECF No. 9-37, Ex. 35).

### I.    The instant § 2254 petition

On June 28, 2019, Petitioner filed the instant Petition Under 28 U.S.C. § 2254 raising the following grounds for relief:

1.  Petitioner's federal constitutional rights were violated when the trial judge failed to give a jury instruction limiting the weight of the co-defendant's guilty plea.

2.  Petitioner's federal constitutional right to effective assistance of counsel [was] violated when trial counsel failed to challenge the State's gunshot residue expert testimony.

3.  Petitioner's federal constitutional right to effective assistance of counsel [was] violated when trial counsel failed to challenge a recorded telephone conversation between an inmate, the Petitioner, and others without translation and verification of authenticity.

4.  Petitioner's federal constitutional right to effective assistance of counsel was violated when trial counsel failed to request the *Caudill/Flack* jury instruction.

5.  Petitioner's federal constitutional rights were violated when trial counsel failed to object to, move for a mistrial, and/or request a limiting instruction when two State witnesses testified to Rule 403 and 404(b) actions of the Petitioner, including when said State witnesses testified that they overheard the Petitioner threatening to kill a state witness.

6.  Petitioner's federal constitutional rights were violated when trial counsel failed to raise the *Caudill/Flack* jury instruction issue on appeal.

7.  Petitioner's federal constitutional rights were violated when appellate counsel failed to raise the issue of trial counsel failing to object to, move for a mistrial, and/or request a limiting instruction when two State witnesses testified to Rule 403 and 404(b) actions of the Petitioner, including when said State witnesses testified that they had overheard the Petitioner threatening to kill a State witness.

8.  Petitioner's federal and state constitutional rights were violated by the effects of cumulative error.

(ECF No. 2 at 3-22).

On March 2, 2020, Respondent filed the instant Motion to Dismiss and Motion for Summary Judgment (ECF No. 9) and Memorandum in support thereof (ECF No. 10). After being advised, pursuant to the holding of *Roseboro v.* Garrison, 528 F.2d 309 (4th Cir. 1975), of his right and obligation to respond to Respondent's motion, Petitioner filed

11

his Response on August 6, 2020 (ECF No. 15).  Respondent did not file a reply.  This matter is ripe for adjudication.

## **STANDARD OF REVIEW**

Title 28 U.S.C. § 2254(d), which was adopted as part of the Anti-terrorism and Effective Death Penalty Act of 1996 (the "AEDPA") provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim- (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), the Supreme Court held that under the "contrary to" clause, a federal court may grant a writ of habeas corpus with respect to claims adjudicated on the merits in state court only if (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) if the state court decides a case differently from the Supreme Court on a set of materially indistinguishable facts.  The Court further held that under the "unreasonable application" test, a federal court may grant a writ of habeas corpus with respect to a claim adjudicated on the merits in state court only if the state court identifies the correct governing principle from the Supreme Court's decision, but unreasonably applies that principle to the facts of the prisoner's case.  *Id.* at 413.

Moreover, the AEDPA contains a presumption that a state court's factual findings are correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a

determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

Rule 56 of the Federal Rules of Civil Procedure applies to habeas corpus proceedings. *See*, *e.g.*, *Blackledge v. Allison*, 431 U.S. 63, 81 (1977); *Maynard v. Dixon*, 943 F.2d 407, 412 (4th Cir. 1991). Entry of summary judgment is appropriate when there is "'no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Rule 56(c), Fed. R. Civ. P.).

## <u>SUMMARY OF RELEVANT EVIDENCE</u>

During Petitioner's trial, the jury heard testimony from the various law enforcement officials who conducted the investigation and tested evidence, the state medical examiner, and several other eye or ear witnesses. The undersigned will discuss the relevant testimony of the witnesses, as necessary.

Petitioner and Serrano were charged with murdering James Williams, a.k.a., Baby Goon ("Williams") by shooting him on November 3, 2009. As a practical joke, Williams had allegedly placed beer in a baby's bottle and was charged with child endangerment. The baby was the child of Jose Mirandez ("Homicide"), who was incarcerated at the South Central Regional Jail at the time, and Ebony Williams ("Ebony"), who was Williams' cousin. (ECF No. 9-4, Ex. 3B at 14, 16-17). Evidence presented at Petitioner' trial suggested that Homicide's brother, Christopher Martinez, a.k.a "Tech" ("Tech"), Kevin Blount, a.k.a. "Fifty" ("Fifty"), and Serrano had come down from New York to celebrate the baby's birthday; however, there was also evidence that they had been in Charleston for about one month and had come down from New York to sell drugs and buy guns.

Petitioner was also acquainted with this group of individuals.  The State's theory was that Homicide and Ebony wanted Williams to be punished for his role in the baby bottle prank.

The State's first witness at Petitioner's trial was Williams' girlfriend, Rosemary Lacy ("Lacy").  She testified that, during the child neglect hearing, Ebony made remarks such as "It's not fair" and "I'm going to have somebody, you know, do something to him, kill him." (ECF No. 9-4, Ex. 3B at 17).  After the hearing, Williams and Lacy returned to their home and had dinner with some friends.  (*Id.* at 18).  Thereafter, Williams went into the kitchen and was shot through the window.  Lacy testified that she heard gunshots, grabbed her son, and ran upstairs.  When she returned, she found Williams on the floor with a blood spot on the back of his shirt and a hole in his back.  Although Lacy and others tried to move Williams into a vehicle, he died before she could take him to the hospital. (*Id.* at 18-19).  The State Medical Examiner, Dr. Mahmoud, testified that Williams died from a single gunshot wound to the chest that was approximately a quarter of an inch in diameter.  (ECF No. 9-4, Ex. 3B at 182-83).

Kalinda Mitchell ("Mitchell"), one of the friends who was at Williams' house for dinner, testified that she was sitting outside the front of the house when she heard gunshots coming from what she believed was the side of the house.  She, too, ran upstairs after she discovered that the gunshots were coming inside from the back of the house. (ECF No. 9-4, Ex. 3B at 23-24).  Mitchell testified that she knew Petitioner "from being around the West Side." (*Id.* at 25).  She further stated that she had also seen "Fifty" around the neighborhood. (*Id.*)

Charleston Police Officer Peter Kapeluck ("Kapeluck") was one of the first law enforcement officers to arrive at the scene, where he observed Lacy sitting in the back seat of a car with Williams.  (ECF No. 9-4, Ex. 3B at 27).  He observed a gunshot wound to

14

Williams' chest and Williams did not appear to be breathing. Kapeluck ascertained that there were no suspects on the scene and then followed a blood trail leading from the car to the kitchen, where it appeared to have originated. (*Id.* at 27-28). Kapeluck also observed that the kitchen window was damaged by gunshots, and that the back door located in the kitchen, which led to an alleyway behind the house, was locked and undamaged. (*Id.* at 28-30).

The significant testimony at trial surrounds the travels and activities of Petitioner, Serrano, and some of the other New Yorkers on the night of Williams' murder. The State called Fifty's girlfriend, Michelle Bailey ("Bailey"), who testified pursuant to an immunity agreement with the State. (ECF No. 9-4, Ex. 3B at 74). Bailey said, although she was driving her friend Chuck's car that night, which she had used to take Fifty, Tech, and Serrano to Petitioner's father's house, she later received a call from Fifty asking to borrow another car. (*Id.* at 54-55).

Bailey ultimately borrowed a car from another friend, which Fifty and Tech drove away in. However, that car allegedly overheated. Thus, Fifty asked Bailey to return to Petitioner's father's house to give Petitioner and Serrano a ride to go "fight Jay," which she understood to mean that they were going to beat up Williams because of the baby bottle prank. (*Id.* at 61-62). Bailey picked up Petitioner and Serrano and parked near a church that was about a block away from Williams' house. (*Id.* at 62). Bailey's friend, Sharon Scott ("Sharon"), was also in the car. (*Id.* at 63).

According to Bailey, Petitioner and Serrano exited the vehicle and began walking, while Bailey and Sharon stayed in the car. She stated that she could not see Williams' house; nor did she hear anything. (*Id.* at 64). Approximately 5-10 minutes later, Petitioner and Serrano returned to the car and Petitioner stated, "I think I hit him. I think

I hit him." (*Id.* at 62, 65). Bailey testified that she believed Petitioner meant that he had physically assaulted Williams, but she questioned how he would not know whether he had actually struck him. (*Id.*) Petitioner and Serrano would not answer her questions. (*Id.*)

The group then returned to Bailey's apartment on the East End of Charleston. Fifty and Tech were also there. (*Id.* at 65). Testimony of various witnesses shows that, after everyone had gathered at Bailey's, Petitioner allegedly stated, "I shot him, I felt it, I could feel it." (*Id.* at 65). He also talked about how Williams was putting away some cookies when he shot him. (*Id.* at 67-68).

Bailey further testified that she saw a news report stating that Williams had been shot. She then went into the back room, where Fifty, Tech, Serrano, and Petitioner were sitting and, when she became emotional about the shooting, she noticed Petitioner laughing and smiling. Bailey and Serrano both testified that Petitioner stated he would have to "get rid of her" due to her knowledge of his involvement in the murder. (*Id.* at 69, 72).

According to Bailey, both Petitioner and Serrano used her shower and washed themselves with bleach. (*Id.* at 68, 71). Bailey further testified that the men placed the clothes they had been wearing in a bag and took them to Sharon's apartment. (*Id.* at 68-69).

On cross-examination by Bullman, Bailey testified that Serrano had bought a bunch of guns while he was here in West Virginia, including one with a laser. (*Id.* at 78-79, 84-85). She further stated that she had previously taken the group out to her friend Chuck's place to target practice in the same car she was driving on the night of the murder. (*Id.* at 79). She said all of them were firing guns and none of them were good shots. (*Id.* at 79). However, she further stated that "they all had guns with them, all of the time."

(*Id.* at 81).   Bullman also questioned Bailey about overhearing Fifty asking Williams' neighbor, Gotti, where "Jay" was and calling him a "punk-ass bitch" sometime before the murder.  (*Id.* at 86).

Bailey drove Serrano, Fifty, and Tech back to New York the day after the murder. They allegedly took the guns that had been used in the shooting with them and planned to get rid of them up there.  (*Id.* at 73).   The guns were never located.   Serrano was subsequently arrested and charged with Williams' murder.   When he was arrested in New York, Serrano gave a statement to law enforcement officers there.   At trial, Serrano stated that he told the New York Police that he and Petitioner went to shoot up someone's house and that Petitioner "took it on his own will to shoot somebody through the house" through the window.  (ECF No. 9-4, Ex. 3B at 136).   He admitted to the police that he had shot his gun once and then ran back and got in a car.  (*Id.*)   Serrano subsequently pled guilty to wanton endangerment involving a firearm, which carried a sentence of one to five years in prison.   He further agreed to testify in Petitioner's trial.

Serrano testified that it was Petitioner's idea to go shoot up "somebody's apartment" and Petitioner asked Serrano to go with him "just to do something."  (ECF No. 9-4, Ex. 3B at 102-03).   Serrano further stated that he and Petitioner were the only ones with firearms at that time.  (*Id.* at 102).   Serrano testified that he had a silver 9 millimeter, and Petitioner had a dark gray 40 caliber pistol.  (*Id.* at 102-03).

Serrano testified that Fifty and Tech dropped him and Petitioner off, rather than Bailey and Sharon, but Bailey and Sharon were waiting in the parking lot and gave them a ride after the shooting.  (*Id.* at 104).   Serrano said he was unaware of where they were going, but Petitioner lead them to an alley behind Williams' apartment.   Each of them was wearing jeans and a hoodie and had guns in their waste bands.  (*Id.* at 105).   Serrano

insisted that the only conversation he and Petitioner had before this was about shooting at the house in order to scare Williams, but he had not agreed to shoot anyone.  However, according to Serrano, Petitioner aimed his gun straight at the kitchen window, up against the pane, and fired 4-5 shots directly at Williams.  (*Id.* at 107-08).  Serrano admitted that he then fired one shot into the air.  (*Id.* at 108).  He further admitted that, from his prior experience, someone "definitely" got shot.  (*Id.* at 108-09).

Serrano further testified that when they got back to the car, he got into the back seat on the left side, and Petitioner got in on the right.  (*Id.* at 110).  Petitioner then stated, "I feeled I shot him" and that he saw the man drop on the first shot.  (*Id.*)  Serrano did not say anything and testified that he "stood quiet because I just got put into a situation that was never supposed to occur."  (*Id.*)  He further testified that, once they were all back at Bailey's apartment, Petitioner allegedly stated that "he thought he killed Baby Goon."  (*Id.* at 111).  Serrano confirmed that Petitioner showered and cleaned up with bleach, but he denied that he did the same.  (*Id.* at 113).

Serrano further confirmed that Homicide called them from the jail and that he, Fifty, Tech, and Petitioner spoke with him.  (*Id.* at 112-13).  Serrano identified each person who spoke on the recorded phone call and attempted to explain the meaning of some of the statements that were made on the recording.  (*Id.* at 120-27).  During the recorded phone call, Petitioner stated, "Some shit is going down, gonna write you a letter."  (*Id.* at 122).  Fifty also told Serrano to advise Homicide that "Baby Goon is the word of the day," and that "they did what they had to do."  (*Id.* at 124, 126).  A portion of the recorded phone call captured conversations in Spanish which were not translated for the jury and have never been translated or explained.  When the call was concluded, Petitioner stated, "I told you I shot him." (*Id.* at 127).

On cross-examination by Bullman, Serrano testified that everyone had guns, and that he had purchased a gun from Petitioner. (*Id.* at 129). He further admitted that they had never discussed beating anyone up and that he, Fifty, Tech, and Petitioner knew they were going to go shoot up a house. (*Id.*)

Testimony from Officer Lewis Taylor clarified that the location and trajectory of the bullets indicated that all of the shots, except for one, were aimed at Williams in the kitchen. The remaining shot, which was made by a smaller bullet, entered a neighboring apartment. (ECF No. 9-4, Ex. 3B at 148-57, 161, 167). The police also recovered six fired cartridge cases outside the apartment near the window. (*Id.* at 159-60). No latent prints were recovered from the spent casings. (*Id.* at 167). The State's gunshot residue expert, Koren Powers, testified that gunshot residue was found in three locations in the car: on the rear of the driver's seat, on the rearview mirror, and on the driver's door. (*Id.* at 175-76).

After being thoroughly and properly advised of his rights, Petitioner elected not to testify at trial and the defense called no other witnesses. (ECF No. 9-5, Ex. 3C at 28). In closing arguments, Bullman challenged the credibility of Bailey and Serrano and indicated that the jury could not determine whose gun the fatal shot came from. Bullman also suggested that the driver of the vehicle must have fired a gun because the gunshot residue was found on the mirror and driver's side door, and no testimony put Petitioner in the front seat of the car. Bailey had also testified that the group of men in question had been out taking target practice on the day before the murder, suggesting that the gunshot residue could have been deposited in the car by other people prior to this incident. Bullman argued that the New Yorkers came down to West Virginia to put a hit on Williams

because of the baby bottle incident and determined to blame it on Petitioner, a West Virginian.  (ECF No. 9-5, Ex. 3C at 67-68).

## ANALYSIS

I.    *MOTION TO DISMISS PROCEDURALLY DEFAULTED GROUNDS*

### A.    Exhaustion of State Court Remedies.

Section 2254(b)(1)(A) of Title 28 of the United States Code, states that a petition for a writ of habeas corpus filed in a federal district court by a prisoner in state custody shall not be granted, unless it appears that the applicant has exhausted the remedies available in the state courts, or if the state has waived the exhaustion requirement.  28 U.S.C. §§ 2254(b)(1)(A), (b)(3).    In West Virginia, prisoners may exhaust their available state court remedies either by stating cognizable federal constitutional claims in a direct appeal, or by stating such claims in a petition for a writ of habeas corpus in a state circuit court pursuant to West Virginia Code § 53-4A-1, followed by filing a petition for appeal from an adverse ruling to the SCAWV.  *Moore v. Kirby*, 879 F. Supp. 592, 593 (S.D. W. Va. 1995); *McDaniel v. Holland*, 631 F. Supp. 1544, 1545 (S.D. W. Va. 1986).  A petition for a writ of habeas corpus filed under the original jurisdiction of the SCAWV that is denied with prejudice following a determination on the merits will also exhaust the prisoner's state court remedies.  *See Moore*, 879 F. Supp. at 593; *McDaniel*, 631 F. Supp. at 1546; *see also, Meadows v. Legursky*, 904 F.2d 903, 908-909 (4th Cir. 1990) (*abrogated on other grounds*, *Trest v. Cain*, 522 U.S. 87 (1997)).

Additionally, the petitioner must show that the claims he raised in state proceedings are the same as the claims he now seeks to raise in his federal habeas proceeding.  *See Pitchess v. Davis*, 421 U.S. 482, 487 (1975); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).  The claims in both courts must "fairly present" the "substance" of the

claim, based upon the same factual grounds, and must allege that the same federal constitutional right was violated. *Anderson v. Harless*, 459 U.S. 4, 6 (1982). Respondent concedes that Grounds Two, Three, Four, Six, and Eight of Petitioner's § 2254 petition were properly exhausted in the state courts. (ECF No. 10 at 18). However, Respondent further contends that Grounds One, Five, and Seven were not properly exhausted and, further, are procedurally defaulted and not subject to review by this federal court. (*Id.*)

### B. Procedural Default.

A petitioner who has failed to appropriately raise an issue under the procedures provided in the state courts generally has no further means of addressing the issue in the state tribunals and may be foreclosed from pursuing relief on such claims in the federal courts. This concept is known as "procedural default." See *Smith v. Murray*, 477 U.S. 527 (1986); *see also Fisher v. Angelone*, 163 F.3d 835, 844 (4th Cir. 1998). Procedural default is an adequate and independent state law ground for dismissal of a clam by a federal court. *Bostick v. Stevenson*, 589 F.3d 160, 164 (4th Cir. 2009). "A rule is adequate if it is regularly or consistently applied by the state court . . . and is independent if it does not depend on a federal constitutional ruling." *Hedrick v. True*, 443 F.3d 342, 359 (4th Cir. 2006). In *Boothe v. Ballard*, the Court addressed the procedural default doctrine as follows:

> The procedural default doctrine applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). In addition, "[i]f claims were not exhausted in state court but would now be procedurally barred if brought in state court, then federal courts can treat the claims as if they were procedurally defaulted in the state courts." *Clagett v. Angelone*, 209 F.3d 370, 378 (4th Cir. 2000) (citing *Coleman*, 501 U.S. at 735 n.1). "[T]he procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim." *Gray v. Netherland*, 518 U.S. 152,

162 (1996) (citations omitted). "The procedural default doctrine . . . appl[ies] . . . whether the default in question occurred at trial, on appeal, or on state collateral attack." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citations omitted).

2016 WL 1275054 at *46.

A petitioner's duty to initiate and advance all claims upon initially filing for habeas relief pursuant to W. Va. Code § 53-4A-1 *et seq.*, has been recognized and consistently applied by the SCAWV and West Virginia circuit courts, pursuant to *Losh v. McKenzie*, 277 S.E.2d 606 (W. Va, 1981). Similarly, W. Va. Code § 53-4A-1 *et seq.* and *Losh* have been deemed adequate for purposes of evaluating a procedural bar by the federal courts of this state. *See Howard v. Ballard*, No. 5:08-cv-112, 2009 WL 1872970, at * 14 (N.D. W. Va. June 29, 2009); *Green v. Ballard*, No. 3:02-cv-1348, 2015 WL 1612198, at * 5 (S. D. W. Va. Apr. 10, 2015). As recognized in *Losh,* West Virginia Code §53-4A-1(c) "creates a rebuttable presumption that a state habeas petitioner knowingly and intelligently waives any claim that could have been, but was not, presented during the state habeas proceedings." *Joseph v. Plumley*, Civil Action No. 2:13-28391, 2016 WL 8488201, at *13 (S.D. W.Va. Oct. 11, 2016). (ECF No. 10 at 18-19).

Respondent emphasizes that West Virginia Code § 53-4A-1(c), "clearly contemplates that a person who has been convicted of a crime is ordinarily entitled, as a matter of right, to only one post-conviction habeas corpus proceeding during which he must raise all grounds for relief which are known to him or which he could, with reasonable diligence, discover." Syl. pt. 1, *Gibson v. Dale*, 319 S.E.2d 806, 808 (W. Va. 1984). This statutory section further precludes habeas review on all non-constitutional issues not raised on direct appeal. W.Va. Code § 53-4A-1(c); *see also* Syl. Pt. 2, *Ford v. Coiner*, 196 S.E.2d 91, 95 (W. Va. 1972) ("the burden of proof rests on petitioner to rebut

the presumption that he intelligently and knowingly waived any contention or ground for relief which theretofore he could have advanced on direct appeal"). (ECF No. 10 at 20).

Respondent further asserts that "[t]he *Losh* waiver is a firmly established principle of West Virginia jurisprudence and regularly followed by the courts in West Virginia." *See McNemar v. Plumley*, No. 1:15-cv-00237, 2017 WL 1102656, at *5 (N.D. W. Va. Mar. 24, 2017). He contends that the Circuit Court herein acknowledged that Petitioner had executed a *Losh* list and explicitly asked Petitioner during the omnibus hearing whether he understood "that anything else other than this six [issues] you have given up or waived, surrendered your right to bring it before a court for relief? Do you understand that?" (ECF No. 31, Ex. 29 at 23). Petitioner responded: "Yes, Your Honor." (*Id.*) Thus, Respondent contends that the *Losh* list and Petitioner's acknowledgement on the record constitute adequate state law grounds for a procedural bar of review of the unexhausted claims herein. In particular, Respondent contends that Grounds One, Five, and Seven of Petitioner's § 2254 petition are procedurally defaulted and, thus, barred from review by this court.

In Ground One, Petitioner contends that his "federal constitutional rights" were violated when the trial court failed to give a limiting instruction concerning the weight to be attributed to his co-defendant's guilty plea, as allegedly required by the state court decision in *State v. Caudill*, 289 S.E.2d 748, 755-56 (W. Va. 1982), which was modified by *State v. Flack*, 753 S.E.2d 761 (W. Va. 2013). In *Caudill*, the SCAWV held that it was reversible error for a trial court not to give a limiting instruction concerning the weight of an accomplice's testimony concerning his or her guilty plea to the same or similar charges. In *Flack*, the SCAWV clarified that it is only error for the trial court to fail to give a *Caudill* instruction after one is requested by the defendant.

During Petitioner's trial, Serrano testified that he had pled guilty to the felony offense of wanton endangerment for his role in the events leading to Williams' death and that he agreed to testify against Petitioner in exchange for his plea offer. Petitioner did not request a *Caudill* instruction. Nonetheless, he claims that the trial court should have given the instruction *sua sponte* and that the failure to do so was reversible error that prejudiced his defense by allowing the jury to infer his "guilt by association." Petitioner asserts:

> In a close case such as this one, in which most of the remaining evidence actually pointed to Mr. Serrano and his buddies from New York as being the actual perpetrators of this crime, accomplice evidence of this kind, absent a limiting instruction, certainly has the ability to unfairly convince the jury that if an alleged accomplice and/or co-conspirator pleads guilty to a crime, then the defendant on trial (and thereby inherently linked to the alleged accomplice) is just as guilty of the same, or more severe, crime.

(ECF No. 2 at 4-5). Petitioner further claims that there were "aggravating circumstances" in the instant case because of Serrano's alleged statement to the New York police, which was allegedly not turned over to the defense in discovery, in violation of *Brady v. Maryland*, 373 U.S. 82 (1963), and which Petitioner contends could have been used as impeachment evidence against Serrano and "exacerbated the prejudice" of not giving the limiting instruction concerning his guilty plea and rendered his trial "fundamentally unfair. (*Id.* at 5).

The SCAWV adopted and incorporated the Circuit Court's Order, which found that:

> The failure to give [a *Caudill*] instruction, absent a request, is not reversible error. Moreover, failure to give such instruction was an issue that could have been, but was not, raised in the direct appeal. Therefore, the issue is waived. It is not constitutionally required that a *Caudill* instruction be given, even if requested. Failure to give such instruction is, at best, ordinary trial error, not cognizable in habeas. The petitioner acknowledged at the omnibus hearing that there was no independent duty on the Court to give such an instruction absent request, and that no instruction had been

24

requested.  Therefore, this portion of the "Caudill" claim is deemed waived, abandoned, and unproven.

(ECF No. 9-32, Ex. 30 at 8; ECF No. 9-37, Ex. 35).

The state courts further found that Petitioner failed to present any evidence "as to whether the state withheld a statement from the co-defendant to the New York police, whether the introduction of that statement violated 404(b), and whether counsel was ineffective for not having the statement."  (ECF No. 9-32, Ex. 30 at 17).  The adopted Circuit Court opinion further stated:

> No evidence was taken at all regarding that statement. The petitioner has failed in his burden of proof to demonstrate that his counsel was ineffective in dealing with the statement or that the state committed a constitutional violation by withholding exculpatory information. As the petitioner has failed to prove this contention, it affords him no relief.

(*Id.*).  Thus, as asserted by Respondent, the state courts' decisions were based on adequate and independent state law grounds, and Petitioner has not rebutted the presumption that he knowingly and intelligently waived this ground for relief.  Accordingly, Ground One of the § 2254 petition is procedurally defaulted.

In Ground Five of his § 2254 petition, Petitioner contends that Bullman, as trial counsel, provided ineffective assistance because he failed to object to, move for a mistrial, or request a limiting instruction about evidence that Petitioner threatened to kill a State witness.  Within the body of this claim, Petitioner also asserts that his trial counsel failed to object to, move for a mistrial, or request a limiting instruction on evidence that Petitioner allegedly always carried a gun and had illegally sold a gun to Serrano.  Petitioner contends that these acts constituted other bad acts or wrongs and that such evidence should have been subject to the requirements and procedures of Rules 403 and 404 of the West Virginia Rules of Evidence prior to its admission.  (ECF No. 2 at 13-18).

In Ground Seven of his § 2254 petition, Petitioner asserts that Bullman, as appellate counsel, provided ineffective assistance because he failed to raise these issues in Petitioner's Petition for Appeal. (ECF No. 2 at 19-21).

Grounds Five and Seven were simply not raised at all in Petitioner's Circuit Court habeas proceedings and Petitioner acknowledged that he waived all issues not raised at the omnibus evidentiary hearing. The Circuit Court's Order, which was adopted and incorporated by the SCAWV, found that "[t]he petitioner has knowingly, voluntarily, and understandingly raised certain issues as enumerated above, and knowingly, voluntarily, and understandingly waived all other issues" and that the "initial habeas corpus hearing is *res judicata* to all matters raised and to all matters known, or which, with reasonable diligence, could have been known." (ECF No. 9-32, Ex. 30 at 18-19). Moreover, when Petitioner attempted to raise these claims in his final habeas appeal, the SCAWV specifically made the following findings:

> On appeal, petitioner asks this Court to address two claims "that were not raised in the circuit court." [Footnote 3 – The two claims not presented to the circuit court were that petitioner's trial attorney failed to object to testimony that petitioner was overheard threatening to kill a witness and that counsel failed to raise the issue on appeal in ***Sherrod I***.] Respondent contends that we should decline to address those claims. We agree with Respondent. Though petitioner argues that this Court has original jurisdiction to hear habeas claims, we note that this case arises under our appellate jurisdiction. Therefore, we decline to address issues not raised below because "[t]his Court will not pass on a non[-]jurisdictional question which has not been decided by the trial court in the first instance. [Citations omitted].

*Sherrod III*, 2019 WL 912831 at *2 and n.3. (ECF No. 9-37, Ex. 35 at 2, 11 n.3).

These findings, taken together, demonstrate an adequate and independent state law ground for denial of these claims, and Petitioner has not rebutted the presumption

that he knowingly and intelligently waived these grounds for relief.  Accordingly, Grounds Five and Seven are procedurally defaulted.

Based upon a review of the record, the undersigned agrees that Grounds One, Five, and Seven of Petitioner's § 2254 petition are procedurally defaulted and subject to summary dismissal.  Petitioner failed to exhaust those claims in the state courts.  Moreover, the SCAWV adopted the specific finding that any claims not raised by the petitioner in his initial circuit court habeas proceeding and appeal were barred by *res judicata*.  Thus, the state courts have specifically indicated that Petitioner is foreclosed from any further relief on those claims in the state courts, which serves as an adequate and independent state law ground barring their review in this federal court.

### C.    Exceptions to procedural default.

A petitioner may be able to obtain review of a procedurally defaulted claim by establishing cause for the default and prejudice from the failure to review the claim.  *See Gray v. Netherland*, 518 U.S. 152, 162 (1996).  In general, "cause" refers to "some objective factor external to the defense that impeded counsel's efforts" to comply with the State's procedures.  *Strickler v. Greene*, 527 U.S. 263, 283 n.24 (1999) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1999).  One such factor could be "interferences by officials that make compliance with the state's procedural rules impracticable."  *Wright v. Angelone*, 151 F.2d 151, 160 n.5 (4th Cir. 1998).  In limited circumstances, "cause" may also include ineffective assistance of counsel.  *Id.; see also Martinez v. Ryan*, 132 S. Ct. 1309 (2012).  "Prejudice" means that the alleged error worked to the petitioner's "actual substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *McCarver v. Lee*, 221 F.3d 583, 592 (4th Cir. 2000) (quoting *United States*

*v. Frady*, 456 U.S. 152, 170 (1982)); *see also Wolfe v. Johnson*, 565 F.2d 140, 158 n.27 (4th Cir. 2009).

In *Martinez v. Ryan*, 566 U.S. 1, 14 (2012), the Supreme Court recognized a limited, equitable exception to procedural default that allows a federal habeas court to find cause and prejudice to consider a substantial claim of ineffective assistance of trial counsel when counsel in an initial post-conviction collateral review proceeding provided ineffective assistance.  *See also Trevino v. Thaler*, 569 U.S. 413, 423 (2013).  This narrow exception does not extend to ineffective assistance of appellate counsel.  *See Davila v. v. Davis*, 137 S. Ct. 2058, 2065 (2017).

Petitioner's Response attempts to show cause and prejudice to overcome the procedural default of Grounds Five and Seven by asserting that his habeas counsel, Robert Dunlap, provided ineffective assistance during the omnibus hearing when he limited the grounds for relief to six claims and by failing to present sufficient evidence to support the claims that were pursued.  As noted by Petitioner, in *Trevino*, the Supreme Court stated:

> We consequently read [*Coleman v. Thompson*, 501 U.S. 722 (1991] as containing an exception, allowing a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law *requires* that an "ineffective assistance of trial counsel [claim] ... be raised in an initial-review collateral proceeding." *Martinez, supra,* at −−−−, 132 S. Ct., at 1318–1319, 1320−1321.

569 U.S. 413, 423 (2013).  (ECF No. 15 at 7-8).  Petitioner claims that "[a]ll of these reasons are evident in the present case." (*Id.* at 8).  His Response further contends that these claims of ineffective assistance of counsel are substantial and that he essentially had no appellate counsel, since his appellate counsel was the same attorney who represented

him at trial.  Petitioner further argues that he and Dunlap "did not see eye to eye on the habeas grounds to be raised" and that most of the grounds he wanted to raise were waived, including the failure to object to these evidentiary issues.  He further states that he was "under the assumption that ALL grounds would be considered by the circuit court."  (*Id.* at 8-9).  Petitioner further contends that no counsel was appointed to represent him in his habeas appeal.  (*Id.* at 9).  Thus, he contends that the court should find cause and prejudice to overcome his procedural default of Grounds Five and Seven.

However, Petitioner's present contentions are belied by his responses to the Circuit Court's inquiry at the omnibus hearing to ascertain that he understood that he was waiving any claims other than the six that Dunlap had identified, and Petitioner should be held to his representations made on the record in the state court proceedings. Additionally, to the extent that Petitioner is claiming that he can establish cause for his default due to the failure of Bullman to raise these claims in his direct appeal and the failure to appoint counsel to represent him in his habeas appeal, those contentions lack merit, as the Supreme Court made it clear in *Davila, supra*, that the *Martinez/Trevino* exception does not extend to the appeal process; rather, it applies only at the initial collateral proceeding level.  137 S. Ct. at 2065-66.

Moreover, Ground Five does not state a substantial claim of ineffective assistance of counsel and Petitioner cannot demonstrate any actual prejudice from the failure to raise that claim.  A substantial claim is one that the petitioner can "demonstrate has some merit."  *Martinez*, 566 U.S. at 14.  At bottom, Petitioner's claims challenging the admission of his alleged other bad acts because the proper procedure for such admission under state evidence rules was not followed is a matter of state evidentiary law. Nevertheless, to the extent that Petitioner has raised his challenge as a claim of ineffective

assistance of trial counsel for failing to object to the admission of this evidence, he must be able to demonstrate that such admission actually prejudiced his defense and that the outcome of the proceeding would have been different, absent the admission of such evidence, which he has failed to do.

Petitioner's petition acknowledges that his alleged threats to kill Michelle Bailey as a potential witness to facts surrounding the murder would likely have been admissible as a Rule 404(b) exception showing consciousness of guilt. Nonetheless, he questions whether the prejudice of such evidence would outweigh its probative value under Rule 403. (ECF No. 2 at 15). Thus, he claims that the prejudice arises from the failure to conduct the Rule 403 balancing test. (*Id.*) He further claims that the prosecutor was permitted to use this evidence to assail his character in closing arguments. (*Id.*) He makes similar arguments concerning the evidence that he allegedly illegally carried and sold firearms. (*Id.* at 16-17).

Beyond stating that the claim must have "some merit," the Supreme Court and the Fourth Circuit have not squarely addressed the meaning of a "substantial claim" under *Martinez*. Nonetheless, in addressing this issue, some of our sister courts have adopted the standard for the issuance of a certificate of appealability set forth in *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. at 484) requiring a petitioner to "sho[w] that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *See, e.g., Moore v. Stirling*, No. 4:14-cv-4691-MGL-TER, 2017 WL 8294058, at *23 (D.S.C. Dec. 28, 2017), *report and recommendation adopted*, No. 4:14-cv-04691-MGL, 2018 WL 1430959 (D.S.C. Mar. 21,

2018), *aff'd*, 952 F.3d 174 (4th Cir. 2020).  In *Gray v. Davis*, No. 1:11-cv-630, 2014 WL

2002132, at *3-4 (E.D. Va. May 13, 2014), the Court held:

> Stated otherwise, a claim is "insubstantial" if "it does not have any merit or
> is wholly without factual support." *Martinez*, 132 S. Ct. at 1319. Based on
> this explanation and reference in *Martinez*, it appears clear that the
> required showing of a "substantial claim" is simply a preliminary filter, with
> a standard of proof significantly lower than for success on the merits, used
> solely for determining whether the Court should proceed further to a final
> determination of the merits of the claim, with, as warranted, the
> development of a more extensive record or an evidentiary hearing.
> Nevertheless, the Court concludes that in making that determination, a
> court may consider the weight and reliability of the evidence presented.
> Based on the formulation in *Martinez*, and within the context of a defaulted
> IAC claim, the Court also concludes that the "substantiality" showing
> requirement applies to both prongs of the *Strickland* test applicable to
> whether state habeas counsel was "ineffective." *See Clabourne v. Ryan*, 745
> F.3d 361, 376 (9th Cir.2014) (holding that, with respect to a *Martinez* claim
> pertaining to the ineffectiveness of state habeas counsel, a petitioner must
> make a "substantial" showing with respect to both the performance and the
> prejudice prongs of the *Strickland* standard).

 (Emphasis added); s*ee also Poindexter v. Clarke*, No. 2:14-cv00291, 2014 WL 11512359

(E.D. Va. Dec. 16, 2014).  Therefore, this Court must examine whether Petitioner's

ineffective assistance of counsel claim has any potential merit or factual support under

both prongs of *Strickland*.

Even if Petitioner could demonstrate that Bullman's failure to challenge the other

bad acts evidence was deficient, it is unlikely that he could have overcome the State's

significant evidence supporting his guilt in order to establish that the other bad acts

evidence caused him an "actual substantial disadvantage infecting his entire trial with

error of constitutional dimensions." *McCarver, supra,* 221 F.3d at 592.  Therefore, he has

not demonstrated that he could satisfy *Strickland*'s prejudice prong and cannot show that

his habeas counsel, Mr. Dunlap, was ineffective in failing to present this claim of

ineffective assistance of trial counsel.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Grounds One, Five, and Seven of Petitioner's § 2254 petition are procedurally defaulted and barred from review by this federal court, and that the petitioner has not sufficiently demonstrated any cause and prejudice or a miscarriage of justice that would excuse such default. Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that Grounds One, Five, and Seven of Petitioner's § 2254 petition must be dismissed as being procedurally barred.

II.     *MOTION FOR SUMMARY JUDGMENT CONCERNING EXHAUSTED CLAIMS*

    **A.     Ineffective assistance of counsel claims.**

In Grounds Two, Three, Four, and Six of his § 2254 petition, Petitioner asserts various claims of ineffective assistance of counsel by his trial and appellate counsel. In *Strickland v. Washington*, 466 U.S. 688 (1984), the Supreme Court adopted a two-prong test for determining whether a defendant received adequate assistance of counsel. A defendant must show (1) that counsel's representation fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at 687-91. Moreover, "judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. Furthermore, the AEDPA "adds a layer of respect for a state court's application of the legal standard." *Holman v. Gilmore*, 126 F.3d 876, 881 (7th Cir. 1997).

In reviewing trial counsel's performance, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance and the burden is on the petitioner to show prejudice. *Strickland*, 466 U.S. at 689; *see also Hutchins v. Garrison*, 724 F.2d 1425 (4th Cir. 1983). Further, "[a] convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that

are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. Additionally, a petitioner may not merely speculate about potential prejudice but must "affirmatively prove" that the result of the proceedings would have been different but for the deficient performance of trial counsel. *Id.* at 693. The undersigned will address each of Petitioner's exhausted claims of ineffective assistance of counsel using this standard.

1.    Ground Two – handling of gunshot residue evidence

In Ground Two of his § 2254 petition, Petitioner claims that his trial counsel, Ed Bullman, was ineffective for failing to cross-examine the State's gunshot residue expert, Koren Powers, regarding the residue found in the vehicle used after Williams' murder. Petitioner argues that, despite Michele Bailey's testimony that she had transported several individuals in the same vehicle to a friend's home for target practice just before the night of the murder, trial counsel failed to question Koren Powers about the gunshot residue found on the vehicle's rearview mirror, the interior of the driver's door, and the rear seat area behind the driver's seat. (ECF No. 2 at 7-8). Respondent contends that this claim is without merit.

The state courts determined that counsel's performance in cross-examining Koren Powers constituted a strategic decision, "which will rarely, if ever, constitute ineffective assistance of counsel." (ECF No. 9-32, Ex. 30 at 27). The Court further found that the gunshot residue testimony elicited at trial supported the defense theory that Petitioner lacked motive to murder Williams. (*Id.*) The gunshot residue was found on the rearview mirror, the driver's door, and the back seat area behind the driver. Bullman demonstrated that Bailey drove the car and that Serrano sat behind the driver. (*Id.* at 28). Neither Bailey nor Serrano placed Petitioner, the alleged shooter, in the front seat driving or adjusting the mirror, or in the back seat behind the driver, which was where Powers testified the

33

residue was found. (*Id*.)  The Court, thus concluded that because "the gunshot residue evidence supported the defense theory that the petitioner was not involved, not in the car, or at worst in the car but not associated with the area of the car where the gunshot residue was found, it was objectively reasonable performance for counsel to limit his cross-examination to those answers which supported the defense." (*Id*.)

At the omnibus evidentiary hearing, Petitioner's expert, Martin Sheehan, acknowledged that the gunshot residue was found on the driver's side of the vehicle.  He further acknowledged that the testimony demonstrating that Bailey drove the car, Serrano sat behind her in the rear, and Petitioner was in the rear passenger seat area, reduced the incriminating impact of the gunshot residue evidence with respect to Petitioner.  (ECF No. 9-31, Ex. 29 at 29).  At the evidentiary hearing, Bullman testified that he did not further question the expert on the gunshot residue because he found the testimony supportive of Petitioner's defense and his experience with such testimony in other cases instructed that further questioning might allow the expert to explain away the absence of the residue and, therefore, it was best to leave the testimony alone.  (*Id*. at 45–46).  Thus, Bullman's testimony supported a finding that the failure to further cross-examine Powers about the location of the gunshot residue, and the failure to call his own gunshot residue expert were reasonable strategic decisions.

Respondent asserts:

The facts elicited from both Michele Bailey and State expert Koren Powers demonstrates that trial counsel's decision not to question Koren Powers further about the location of the gunshot residue was a strategic decision. This strategic decision was reasonable in light of the fact that the expert's testimony was consistent with the defense theory of the case and trial counsel's assessment that further questioning could have resulted in the expert explaining away the absence of gunshot residue where Petitioner was situated in the vehicle. For these reasons Petitioner cannot satisfy either

prong of the *Strickland* analysis and his claim of ineffective assistance is without merit.

(ECF No. 10 at 28).

Petitioner's Response does not specifically address this claim. Rather, the Response summarily asserts that the state courts unreasonably applied the Supreme Court's standard governing ineffective assistance of counsel claims set forth in *Strickland*, and further discusses case law concerning the application of the § 2254(d) standards of review without any further explanation of how *Strickland* was allegedly misapplied in his case with respect to this particular claim.

As noted by the Circuit Court in the habeas decision, Petitioner's expert on attorney performance, Mr. Sheehan, had no reason to doubt the accuracy of the gunshot residue expert's testimony and essentially opined that the defense should have called their own expert simply because the State had one. He later stated that, while he may not have called his own expert, he would have made better use of the State's expert to ensure that the jury understood the limitations of gunshot residue evidence. (ECF No. 9-32, Ex. 30 at 13-14).

However, Sheehan acknowledged that he had not even read the trial transcript or the SCAWV's decision affirming Petitioner's conviction. (*Id.*) While he believed that the handling of the gunshot residue evidence fell below an objective standard of reasonableness, he refused to give an opinion on the prejudicial nature of the alleged deviation from the standard of care. (*Id.*) Meanwhile, Bullman's testimony demonstrates that he made a tactical decision not to call his own expert or further dwell on the State's expert's testimony.

The Circuit Court's decision, which was adopted an incorporated by the SCAWV, made the following conclusions about this claim:

> The petitioner challenges the performance of trial counsel with regard to the gunshot residue testimony by asserting that trial counsel should have hired an expert to challenge the state's expert, and further should have cross-examined the witness more vigorously regarding the gunshot residue. "While counsel's general duty to prepare necessitates an investigation of the facts, there is no constitutional demand that an investigator be hired or for experts to be retained in every case." *Flack v. Ballard*, 2017 W. Va. LEXIS 447, *25-26.
>
> Again, as noted above, how to cross-examine a witness, what questions to ask, is the essence of a strategic decision which will rarely, if ever, constitute ineffective assistance of counsel. * * * The gunshot residue testimony elicited at trial actually supported the defense theory. * * * Therefore, even if the jury chose to believe that the petitioner was in the car, the evidence was that the gunshot residue was not associated with him. The evidence tended to demonstrate that the person (or persons) who shot guns were on the driver's side, not on the passenger's side where the evidence placed the petitioner. Trial counsel highlighted this for the jury by asking who drove the vehicle, noting that it was someone who fired a gun, which did not match the testimony of either Serrano or Bailey. No one put the shooters in the front seat driving, adjusting the mirror. Certainly no one put the petitioner in the front seat. Therefore, since the gunshot residue evidence supported the defense theory that the petitioner was not involved, not in the car, or at worst in the car but not associated with the area of the car where the gunshot residue was found, it was objectively reasonable performance for counsel to limit his cross-examination to those answers which supported the defense. Moreover, the result of the trial would not have differed had counsel hired an independent expert nor asked more questions on cross-examination. The petitioner's expert opined that counsel was objectively deficient, yet did not know what evidence the jury actually heard regarding gunshot residue. The Court rejects the defense contention that counsel was objectively deficient in his handling of the gunshot residue issue, and further finds that hiring an expert or asking different questions would not have affected the result of the proceeding. The petitioner cannot satisfy either prong of *Strickland/Miller* and this claim affords no relief.

(ECF No. 9-32, Ex. 30 at 27-28).

The evidence of record demonstrates that Bullman's decision not to further cross-examine the State's gunshot residue expert or to call his own expert on the issue was a reasonable strategic decision that is not subject to second-guessing under *Strickland* and

Petitioner has not demonstrated the requisite prejudice from that decision to support a claim of ineffective assistance of counsel. Accordingly, based upon a review of all of the evidence of record, the undersigned proposes that the presiding District Judge **FIND** that the state courts' decisions denying habeas corpus relief on this basis were neither contrary to, nor an unreasonable application of, clearly established federal law; nor were those decisions based upon an unreasonable determination of the facts presented in the state court proceedings. Therefore, the undersigned further proposes that the presiding District Judge **FIND** that there are no genuine issues of material fact and Respondent is entitled to judgment as a matter of law on Ground Two of Petitioner's § 2254 petition.

  2. <u>Ground Three – Failure to challenge recorded phone call</u>

In Ground Three of his § 2254 petition, Petitioner asserts that Bullman was ineffective because he failed to make any objections or otherwise challenge the recorded phone call that was played for the jury, which contained segments of people speaking Spanish that were not translated for the jury. Petitioner contends that he did not have the opportunity to review the recording before trial and that the State failed to have the Spanish portions translated.

Petitioner's petition document cites to the United States Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36 (2004), to assert that the recording was a testimonial statement and that he was denied the right to confront and cross-examine his accusers during the trial by the playing of this evidence for the jury. (ECF No. 2 at 9). He further claims that permitting the admission of this unauthenticated and untranslated evidence for the jury without objection was ineffective assistance by Bullman. Petitioner speculates that jurors might have had some limited knowledge of Spanish and might have

attempted to translate the Spanish portions on their own, leading to a flawed understanding of the evidence. (*Id.*)

Respondent's memorandum of law contends that the state courts properly concluded that trial counsel's failure to have the phone call translated was not objectively deficient performance. (ECF No. 9-32, Ex. 30 at 25). Respondent further notes that Petitioner's expert, Mr. Sheehan. testified that he was unable to establish prejudice resulting from counsel's failure. (*Id.*) Petitioner's Response does not specifically address this claim. (ECF No. 15).

The Circuit Court order denying Petitioner habeas relief, which was adopted and incorporated by the SCAWV, made the following findings:

> As to the phone call, trial counsel testified that he was unaware of anything exculpatory or inculpatory on that phone call. He did not seek translation because the conversation in Spanish, excluding his client, supported the defense theory of the case. This Court will not engage in speculation that there was something harmful to the petitioner on that phone call end that counsel should have had it translated. The Court must point out that habeas counsel did not have the conversation translated and has not proffered that there was any information germane to petitioner or his defense on that phone call. The burden is on the petitioner to demonstrate both prongs of the *Strickland/Miller* standard. That is, petitioner bears the burden of proving that his counsel engaged in objectively deficient performance AND that the error or omission affected the result of the proceeding to petitioner's prejudice. Even petitioner's expert, who abstained from commenting on the prejudice prong in other respects stated that petitioner could not prove prejudice in relation to the phone call. Such failure is fatal to petitioner's claim. Moreover, the Court does not find that failure to have the call translated was objectively deficient performance. The Court is aware that for strategic reasons it is sometimes better not to know, particularly if the contents of the phone call were harmful to the petitioner.

(ECF No. 9-32, Ex. 30 at 24-25). Significantly, the Circuit Court noted that Petitioner's statement during the phone call was not inculpatory and indicated only that he would write Homicide a letter. (*Id.* at 25). The order further states:

> The whole conversation did not contain any admissions or accusations about the death of James Williams. The phone conversation further bolstered the defense contention that it was the gang from New York who murdered James Williams, and not his friend from Charleston, W.Va. Moreover, the fact that part of the conversation was in Spanish also bolstered that theory. Trial counsel noted that there was no real idea what "they" were saying on the tape but the only people who knew were the brothers or White Mike and ". . . he is just not telling us what they were telling each other" and that White Mike was the one who was laughing during the phone call about a murder, someone being taken out, recalling the good times with his buddy. (Trial Transcript at 354.) The fact that some of the phone call was in Spanish, apparently excluding the petitioner from participation in the conversation only served to reinforce the defense contention that [Petitioner] was the outsider set up to take the fall for the gang from New York.

(*Id.*) The Court further found that the phone call evidence was sufficiently authenticated by Serrano, who participated therein, and that Petitioner's arguments about the Spanish portion of the conversations was entirely speculative, as he never had those segments translated either. (*Id.* at 25-26).

Consequently, the Court found that trial counsel's strategic choices regarding the phone call evidence were reasonable and that Petitioner failed to demonstrate that, had the phone call been translated, the result of the trial would have been different or that such evidence would have otherwise been beneficial to Petitioner. (*Id.*) Thus, he has not demonstrated the requisite prejudice under *Strickland*.

Accordingly, based upon a review of all of the evidence of record, the undersigned proposes that the presiding District Judge **FIND** that the state courts' decisions denying habeas corpus relief on this basis were neither contrary to, nor an unreasonable application of, clearly established federal law; nor were those decisions based upon an unreasonable determination of the facts presented in the state court proceedings. Therefore, the undersigned further proposes that the presiding District Judge **FIND** that

there are no genuine issues of material fact and Respondent is entitled to judgment as a matter of law on Ground Three of Petitioner's § 2254 petition.

### 3.    Grounds Four and Six – *Caudill* instruction

In Ground Four of his § 2254 petition, Petitioner contends that Bullman provided ineffective assistance of counsel during the trial because he failed to request a limiting instruction concerning the testimony of Petitioner's co-defendant, Mike Serrano, concerning his guilty plea to the felony of wanton endangerment arising out of the same facts. (ECF No. 2 at 10-13). In Ground Six of his § 2254 petition, Petitioner contends that Bullman was also ineffective when he failed to assert a claim concerning the lack of a *Caudill* instruction in his direct appeal. (ECF No. 2 at 18-19).

In support of these claims, Petitioner relies upon the SCAWV's decision in *State v. Caudill*, 289 S.E.2d 748 (W. Va. 1982) and its subsequent decision in *State v. Flack*, 753 S.E.2d 761 (W. Va. 2013). In *Caudill*, the SCAWV found as follows:

> In a criminal trial an accomplice may testify as a witness on behalf of the State to having entered a plea of guilty to the crime charged against a defendant where such testimony is not for the purpose of proving guilt of the defendant and is relevant to the issue of the witness-accomplice's credibility. The failure by a trial judge to give a jury instruction so limiting such testimony is, however, reversible error.

Syl. Pt. 3, *State v. Caudill*, 289 S.E.2d 748 (W.Va. 1982), *holding modified by State v. Flack*, 753 S.E.2d 761 (W. Va. 2013).

In *Flack*, the SCAWV clarified that it is only reversible error not to give a *Caudill* instruction upon motion for such instruction by the defendant. 753 S.E.2d at 766. Petitioner emphasizes the fact that *Flack* was decided well after Petitioner's conviction and direct appeal and, thus, was not clearly established law at the time of Petitioner's trial.

Therefore, he contends that *Caudill* absolutely required that such instruction be given and the failure to request the instruction was prejudicial error.

Petitioner asserts that the State questioned Serrano about his guilty plea several times during his testimony and again referred to it during closing arguments. (ECF No. 2 at 11). He further contends that Bullman's failure to request that a limiting instruction be given contemporaneously with Serrano's testimony and again when the jury was instructed at the end of the trial was deficient performance that fell below an objective standard of reasonableness and denied him a fair trial. (*Id.*) He further contends that this failure was "extremely prejudicial" to his case because the State's entire case hinged on Serrano's testimony. (*Id.* at 11-12). Petitioner further suggests that Bullman damaged his theory of the case that the New York crew committed the murder and attempted to pin it on Petitioner by not requesting the limiting instruction and allowing the jury to find his "guilt by association." (*Id.* at 12).

Respondent's memorandum of law asserts that "[a]s the Circuit Court found, it was the damning testimony from Ms. Bailey and Serrano that resulted in Petitioner's conviction and not the lack of a limiting instruction as to the weight of Serrano's guilty plea." (ECF No. 10 at 34). Thus, Respondent contends that Petitioner failed to meet his burden of demonstrating prejudice from the lack of the limiting instruction and, therefore, he cannot establish that Bullman's conduct was constitutionally ineffective. (*Id.*)

After Bullman acknowledged that his failure to request a *Caudill* instruction was an oversight (ECF No. 9-31, Ex. 29 at 42), the state courts found that such failure was objectively deficient performance. (ECF No. 9-32, Ex. 30 at 28). However, the state court decisions further found that the lack of such an instruction did not affect the outcome of

41

Petitioner's trial and, thus, he could not satisfy the prejudice prong of *Strickland/Miller*.
(*Id.* at 29).   The state court decisions further reasoned:

> Serrano's detailed testimony about the crime and his participation in it,
> corroborated by the physical evidence and by Bailey's testimony, coupled
> with Bailey's testimony about petitioner's damaging admissions about
> killing the victim convicted the petitioner not the brief reference to the plea
> agreement, which the jury needed to hear in order to determine credibility.
> The failure to request the instruction was not prejudicial and this contention
> affords the petitioner no relief.

(*Id.* at 31–32).

Based upon a review of all of the evidence of record, there was other evidence upon
which the jury could find Petitioner guilty of the first degree murder of Williams, and the
testimony concerning Serrano's guilty plea had minimal effect under the totality of the
circumstances.   Thus, the state courts' findings that Petitioner could not demonstrate
sufficient prejudice from the failure to request a limiting instruction concerning Serrano's
guilty plea a reasonable application of *Strickland*.

Accordingly, the undersigned proposes that the presiding District Judge **FIND**
that the state courts' decisions denying habeas corpus relief on this basis were neither
contrary to, nor an unreasonable application of, clearly established federal law; nor were
those decisions based upon an unreasonable determination of the facts presented in the
state court proceedings.   Therefore, the undersigned further proposes that the presiding
District Judge **FIND** that there are no genuine issues of material fact and Respondent is
entitled to judgment as a matter of law on Ground Four of Petitioner's § 2254 petition.

Likewise, the failure to establish prejudice from the lack of a limiting instruction is
fatal to Petitioner's claim in Ground Six that Bullman should have asserted a claim of
error based thereon in Petitioner's direct appeal.   Petitioner summarily contends that,
had this issue been asserted in his appeal, his conviction would have been reversed.   (ECF

No. 2 at 18). Petitioner adds a second claim of ineffective assistance of appellate counsel for also not challenging the "aggravating circumstance" of the State's alleged failure to turn over Serrano's statement to New York City Police in discovery. Petitioner contends that, had Bullman briefed this issue in his appeal, his conviction would have been reversed under *Brady*. (*Id.* at 19).

As noted previously herein, the state courts found that Petitioner failed to present any evidence "as to whether the state withheld a statement from the co-defendant to the New York police, whether the introduction of that statement violated 404(b), and whether counsel was ineffective for not having the statement." (ECF No. 9-32, Ex. 30 at 17). The state court decisions further found:

> No evidence was taken at all regarding that statement. The petitioner has failed in his burden of proof to demonstrate that his counsel was ineffective in dealing with the statement or that the state committed a constitutional violation by withholding exculpatory information. As the petitioner has failed to prove this contention, it affords him no relief.

(*Id.*). Thus, the state courts essentially found that Petitioner could not meet either prong of *Strickland* to demonstrate constitutional error in the handling of Serrano's allegedly withheld statement, which has not been demonstrated to be exculpatory or inconsistent enough to serve as impeachment evidence.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the state courts' decisions denying habeas corpus relief on this basis were neither contrary to, nor an unreasonable application of, clearly established federal law; nor were those decisions based upon an unreasonable determination of the facts presented in the state court proceedings. Therefore, the undersigned further proposes that the presiding District Judge **FIND** that there are no genuine issues of material fact and Respondent is entitled to judgment as a matter of law on Ground Six of Petitioner's § 2254 petition.

## B.      Ground Eight - cumulative error

In Petitioner's final ground for relief in his § 2254 petition, he asserts that the combined effect of errors in his case rendered his trial unfair and justifies a reversal of his conviction.  Petitioner asserts that the United States Supreme Court has recognized that "the combined effect of multiple trial errors may give rise to a due process violation, even where the errors individually would not require reversal, if there is a substantial and injurious effect or influence on the jury's verdict.  (ECF No. 2 at 21-22).

Respondent's memorandum of law cites a recent case from this United States District Court describing the cumulative error doctrine as follows:

> Pursuant to the cumulative error doctrine, the cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error. *United States v. Basham*, 561 F.3d 302, 330 (4th Cir. 2009) (internal quotations omitted). To reverse for cumulative error, the error must "so fatally infect the trial that they violated the trial's fundamental fairness." *Basham*, 561 F.3d at 330 (quoting *United States v. Bell*, 367 F.3d 452, 471 (5th Cir. 2004)). However, "legitimate cumulative-error analysis evaluates only the effect of matters actually determined to be constitutional error, not the cumulative effect of all of counsel's actions deemed deficient." *Fisher v. Angelone*, 163 F.3d 835, 852 n.9 (4th Cir. 1998). For cumulative error to apply then, a court must first conclude that constitutional errors did in fact occur, and while harmless individually, the aggregate effect of the errors was to effectuate grave constitutional harm. *Id.*

*Shultz v. Terry*, No. 2:18-cv-00899, 2019 WL 2577970, at *28 (S.D. W.Va. Feb. 8, 2019), *report and recommendation adopted*, No. 2:18-cv-00899, 2019 WL 1398071 (S.D. W.Va. Mar. 28, 2019).

In *Fisher v. Angeleone*, 163 F.3d 835, 852 (4th Cir. 1998), the Fourth Circuit held that "legitimate cumulative-error analysis evaluates only the effect of matters actually determined to be constitutional error...." [Emphasis added].  The *Fisher* Court further held:

44

> Having just determined that none of counsel's actions could be considered constitutional error, *see Lockhart v. Fretwell,* 506 U.S. 364, 369 n. 2, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993) ("[U]nder *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), an error of constitutional magnitude occurs in the Sixth Amendment context only if the defendant demonstrates (1) deficient performance *and* (2) prejudice." (emphasis added)), it would be odd, to say the least, to conclude that those same actions, when considered collectively, deprived Fisher of a fair trial. Not surprisingly, it has long been the practice of this Court individually to assess claims under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See, e.g., Hoots v. Allsbrook,* 785 F.2d 1214, 1219 (4th Cir.1986) (considering ineffective assistance claims individually rather than considering their cumulative impact).

163 F.3d at 852.  Thus, in order for a cumulative error analysis to apply, the court must first find that there have been actual constitutional errors.

Petitioner's claim of cumulative error stems from claims which the court has previously found to be non-errors.  Because the court has already found that there were no violations of Petitioner's constitutional rights, to the extent that the petitioner raises (as a basis for cumulative error) claims already addressed by the court, his claim of cumulative error lack merit as well.  The state courts found as follows on this claim:

> This Court will quickly dispense with the claim that cumulative errors at petitioner's trial or by his counsel resulted in an unfair proceeding entitling him to relief. . . . [T]his Court finds that counsel may have been objectively deficient in not requesting the Caudill instruction. However, this Court also finds that omission did not affect the result of petitioner's trial. Therefore, there was no error, much less cumulative error in these proceedings.

(ECF No. 9-32, Ex. 30 at 23).

The undersigned proposes that the presiding District Judge **FIND** that Petitioner was not denied a fair and impartial trial based on the cumulative effect of any alleged errors asserted in his federal petition.  Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the state courts' decisions denying habeas corpus relief on this basis were neither contrary to, nor an unreasonable application of, clearly

established federal law; nor were those decisions based upon an unreasonable determination of the facts presented in the state court proceedings. Therefore, the undersigned further proposes that the presiding District Judge **FIND** that there are no genuine issues of material fact and Respondent is entitled to judgment as a matter of law on Ground Eight of Petitioner's § 2254 petition.

## RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** Respondent's Motion to Dismiss and Motion for Summary (ECF No. 9) and dismiss this matter from the docket of the court.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the district court and a waiver of appellate review by the circuit court of appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States*

*v. Schronce,* 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on the opposing party and Chief Judge Johnston.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to Petitioner, and to transmit it to counsel of record.

February 22, 2021

Dwane L. Tinsley
United States Magistrate Judge